NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-5058

BLUE DOT ENERGY COMPANY, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant,

and

WASTE MANAGEMENT OF WASHINGTON, INC.,

Defendant.

———————————————

DECIDED:  May 2, 2006

———————————————

Before NEWMAN, GAJARSA, and PROST, <u>Circuit Judges</u>.

PROST, <u>Circuit Judge</u>.

The Air Force awarded Waste Management a contract for solid waste disposal at Fairchild Air Force Base ("Fairchild AFB") after determining that Waste Management was the only responsible source for the waste disposal services.  Similarly, because the Air Force determined that it would not receive two or more bids from qualified, responsible sources, the Air Force did not set-aside the contract at Fairchild AFB for the

Small Business Administration's Historically Underutilized Business Zone program ("HUBZone").

Blue Dot Energy Co., Inc. ("Blue Dot"), a company that has previously been awarded HUBZone contracts, brought suit in the United States Court of Federal Claims protesting the award of the contract to Waste Management. The Court of Federal Claims concluded that the Air Force's decision to grant the contract to Waste Management instead of setting the contract aside for HUBZone violated applicable statutes and regulations and also lacked a rational basis. It therefore enjoined the contract with Waste Management and ordered the Air Force to issue a new solicitation for the waste disposal services as a set-aside for HUBZone. Because we find on appeal that the Air Force did not violate applicable statutes or regulations and that its decision evinced rational reasoning, we reverse.

**I.**

Under the Competition in Contracting Act ("CICA"), the general rule for government procurement contracts is that "the head of an agency in conducting procurement for property or services . . . shall obtain full and open competition through the use of competitive procedures in accordance with the requirements of this chapter and the Federal Acquisition Regulation." 10 U.S.C. § 2304 (2000).[1] The CICA, however, provides exceptions to this general rule of full and open competition. One of these exceptions allows "[t]he head of an agency [to] use procedures other than competitive procedures only when—(1) the property or services needed by the agency

---

[1] The Federal Acquisition Regulation is a set of uniform policies and procedures for government acquisition of supplies and services. They are codified at 48 C.F.R. Part 19.

are available from only one responsible source . . . and no other type of property or services will satisfy the needs of the agency." 10 U.S.C. § 2304(c)(1) (2000).

But this is not the only exception to full and open competition in government contracts. Other government programs, such as those promulgated under the Small Business Act (Chapters 14 and 14A of 15 U.S.C.), are designed to "aid, counsel, assist and protect" small-business concerns in order to "maintain and strengthen the over-all economy of the Nation." 15 U.S.C. § 631(a) (2000). As described recently in Contract Mgmt., Inc. v. Rumsfeld,

> The purpose of the Act is to ensure the attainment of a "Government-wide goal for participation by small business concerns [in Government contracts] . . . ."
> The [Small Business Administration (the "SBA")] is charged with carrying out the policies of the Act and issuing such rules and regulations as it deems necessary. In order to realize this goal, federal agencies, acting in concert with the SBA, are empowered to establish small business set-asides for contract solicitations.

434 F.3d 1145, 1147 (9th Cir. 2006) (citations omitted) (quoting 15 U.S.C. § 644(g)). One of the programs, HUBZone, is governed by 15 U.S.C. § 657a and is designed to aid small businesses that are located in economically disadvantaged or distressed areas. As required by the program, "a contract opportunity shall be awarded pursuant to this section on the basis of competition restricted to qualified HUBZone small business concerns if the contracting officer has a reasonable expectation that not less than 2 qualified HUBZone concerns will submit offers and that the award can be made at fair market price." 15 U.S.C. § 657a (B) (2000).

In this case, the Air Force decided that it would not set aside the Fairchild AFB contract for HUBZone and instead issued a sole-source solicitation because the Air Force determined that there was only one responsible source. Under the exception

defined in 10 U.S.C. § 2304(c)(1), the Air Force awarded the contract directly to Waste Management, the only responsible source. All other sources, according to the Air Force, were not responsible sources because they could not be "otherwise qualified and eligible to receive an award under applicable laws and regulation" as required by 48 C.F.R. § 9-104-1(g).

With regard to this determination, the Air Force concluded that currently all companies other than Waste Management could not comply with the requirements of the Resource Conservation and Recovery Act of 1976 (the "RCRA") for solid waste disposal at Fairchild AFB. The RCRA states in relevant part that

> [e]ach department, agency . . . of the Federal Government . . . engaged in . . . the disposal . . . of solid waste . . . shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural . . . respecting control and abatement of solid waste . . . .

42 U.S.C. § 6961(a) (2000). Because Fairchild AFB is located in the state of Washington, solid waste disposal at Fairchild AFB must comply with all of that state's solid waste disposal laws including a requirement that:

> [n]o solid waste collection company shall hereafter operate for the hauling of solid waste for compensation without first having obtained from the commission a certificate declaring that public convenience and necessity require such operation . . . .

Wash. Rev. Code § 81.77.040. In other words, absent a certificate from the Washington State Utilities and Transportation Commission ("WUTC"), a company cannot "operate for the hauling of solid waste" and certainly cannot perform the contract at Fairchild AFB. Accordingly, the Air Force determined that companies without a WUTC certificate were not responsible sources and concluded that Waste Management, the only company that currently held a WUTC certificate for the Fairchild

AFB area, was therefore the only responsible source. Based on its responsibility determination, the Air Force did not set aside the contract for HUBZone. It issued a sole-source solicitation for the solid waste disposal at Fairchild AFB and awarded that contract to Waste Management.

## II.

On April 12, 2004, Blue Dot filed a complaint in the Court of Federal Claims alleging that the Air Force's sole-source solicitation and its subsequent award to Waste Management violated applicable statutes and regulations and that the sole-source solicitation and award were arbitrary and capricious. Blue Dot sought preliminary and permanent injunctions barring the Air Force from awarding a sole-source contract to Waste Management. It also sought an order that either awarded the contract to Blue Dot or re-opened the solicitation and set-aside the procurement for HUBZone small business concerns only.

The Court of Federal Claims recognized that its review in a bid protest was quite limited. The court stated that

> [b]id protest actions are reviewed under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"), which provides that:
>
> [t]he reviewing court shall—. . . hold unlawful and set aside agency action, findings, and conclusions found to be—. . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .

Blue Dot Energy Co., Inc. v. United States, No. 04-644C, slip op. at 11 (Ct. Cl. Dec. 13, 2004) (quoting 5 U.S.C. § 706(2)(A)); see also NFT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004).

After stating this standard of review, the Court of Federal Claims determined that the Air Force's interpretation of the RCRA (42 U.S.C. § 6961(a)) and 10 U.S.C.

§ 2304(c)(1) was contrary to law as was, therefore, its decision to issue the sole-source solicitation and to award the contract to Waste Management based on that erroneous interpretation. It held that the Washington law

> imposes no legal duty on the Air Force but requires only that a solid waste collection company have a WUTC Certificate at the time performance of the contract commences operation. Therefore, the Air Force is not constrained either by 42 U.S.C. § 6961 (a) or Wash. Rev. Code § 81.77.040 from soliciting the lowest bids for such services . . . .

Blue Dot Energy, slip op. at 17 (citations omitted). In addition, the Court of Federal Claims determined that by making a responsibility determination about Blue Dot, the actions of the Air Force unlawfully precluded the SBA from exercising authority to make a responsibility determinations.

Along similar lines, the Court of Federal Claims determined that the Air Force's decision to issue the sole-source solicitation and to award the contract to Waste Management lacked a rational basis. First, the Court of Federal Claims determined that the Air Force had no rational basis upon which to require an awardee to have a WUTC solid waste disposal certificate before bidding for the contract. Second, the Court of Federal Claims determined that there was no rational basis upon which the Air Force could reasonably expect to receive less than two responsible offers from qualified HUBZone small businesses, and thus the Air Force's decision to not set aside the contract for HUBZone similarly lacked a rational basis.

In light of those determinations, the Court of Federal Claims granted Blue Dot's motion for injunctive relief. The court also ordered the Air Force to issue a new solicitation to procure solid waste collection and disposal services for Fairchild AFB in compliance with the CICA and HUBZone. Lastly, the Court of Federal Claims also

05-5058                                                    6

granted Blue Dot's request for bid and proposal expenses including costs and attorney's fees associated with this bid protest.

The Air Force appealed. We have jurisdiction pursuant to 28 U.S.C § 1295(a)(3).

**III.**

This court reviews de novo the trial court's decision, reviewing the agency record anew, pursuant to the "arbitrary and capricious" standard prescribed by 28 U.S.C. § 1491 and 5 U.S.C. § 706(2). Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1330-33 (Fed. Cir. 2001); Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000). "The arbitrary and capricious standard applicable here is highly deferential [to the agency]." Advanced Data, 216 F.3d at 1058. This court will sustain a procurement decision "evincing rational reasoning and consideration of relevant factors." Id. (citing Bowman Transp., Inc. v. Ark.-Best Freight Sys., 419 U.S. 281, 285 (1974)).

The Court of Federal Claims, in its decision, found fault with two key Air Force decisions. First, it concluded that the Air Force's decision to grant and award the contract via a sole source solicitation was contrary to law and lacked a rational basis. Second, the Court of Federal Claims concluded that the Air Force's decision to not set-aside the contract for HUBZone was contrary to law and lacked a rational basis. We address these conclusions in that order.

**A.**

As to the propriety of a sole source solicitation, a contracting officer may properly issue a sole source solicitation under the exception provided by 10 U.S.C. § 2304(c)(1) where "the property or services needed by the agency are available from only one

responsible source . . . and no other type of property or services will satisfy the needs of the agency." 10 U.S.C. § 2304(c)(1) (2000). As stated in <u>Black Hills Power & Light v. Weinberger</u>,

> [t]he term "responsible source" is defined at 41 U.S.C. § 403 (Supp. III 1985). It includes a number of relevant factors to be considered by the procuring agency, one of which is whether the prospective contractor "is otherwise qualified and eligible to receive an award under applicable laws and regulation."

808 F.2d 665, 672 (8th Cir. 1987) (quoting 41 U.S.C. § 403); <u>see also</u> 10 U.S.C. § 403 (2000); 48 C.F.R. § 9-104-1(g) (2004).

As discussed above, the Court of Federal Claims held that applicable Washington law does not require the Air Force to only allow existing WUTC certificate holders to bid on its contracts. In our view, however, the question is not whether the law forces the Air Force to require a certificate, but rather whether the Air Force may properly use the possession of the certificate in making its responsibility determination. While, we find no binding precedent directly on this issue, the Court of Federal Claims has previously held that where an applicable law or regulation bars performance of a contract, the procuring agency may use that fact in weighing whether a prospective contractor is responsible. <u>See</u> <u>Norwalk Dredging Co. v. United States</u>, 58 Fed. Cl. 741 (Ct. Cl. 2003) <u>rev'd on other grounds</u> <u>Norwalk Dredging Co.</u>, 375 F.3d 1106, 1113 (Fed. Cir. 2004) (finding that, in a bid protest, if the successful bidder was barred from performing the contract by a statute, then the bidder could not be a responsible bidder because it was not otherwise qualified and eligible to receive an award under applicable laws and regulation). We conclude that under the circumstances in this case, the Air Force was within its discretion to decide that a responsible source needed to have a

WUTC certificate. As a result, the Air Force's determination that only those companies holding a valid WUTC certificate could be responsible bidders was not "a clear violation of law," and therefore its determination cannot be grounds for enjoining the procurement decision. See Emery Worldwide Airlines, Inc. v United States, 264 F.3d 1071, 1085-86 (Fed. Cir. 2001).

The Court of Federal Claims also determined that the Air Force's decision to proceed via a sole-source solicitation lacked a rational basis. The Air Force stated that it "reasonably desires that its awardee possess a [WUTC] certificate before performance of this contract begins because of the critical need for on-going, daily service of this contract." Blue Dot Energy, slip op. at 21. In challenging this rationale, the Court of Federal Claims noted that Washington state has existing provisions that "authorize the WUTC to grant temporary and expedited Certificates, without a hearing, while a permanent application is pending." Id. Although the Court of Federal Claims certainly is correct that the WUTC can grant temporary certificates, nothing suggests that these certificates will in fact be granted. The relevant statute provides that a temporary certificate may issue "only after [the commission] finds that the issuance of such temporary certificate is consistent with public interest." Wash. Rev. Code § 81.77.110. Further, where the area at issue, in this case Fairchild AFB, is covered by the certificate of another solid waste collection company, the "temporary certificate may be issued for a period not to exceed one hundred twenty days." Id. Thus, it is uncertain whether a temporary certificate would issue at all and even then that temporary certificate would last, at most, only one hundred twenty days. Lastly, and most importantly, nothing in the record suggests that Blue Dot was prohibited at any time

from applying for such a certificate. Accordingly, we cannot agree with the Court of Federal Claims that the Air Force's determination lacked a rational basis. Rather, the Air Force's decision evinces rational reasoning and a consideration of relevant factors. In other words, the contracting officer's determination that possession of a WUTC certificate is a responsibility requirement was rational and lawful.

## B.

The Court of Federal Claims also determined that the Air Force's decision not to set aside the contract for HUBZone was both contrary to law and lacked a rational basis. The Court of Federal Claims determined that "[t]he Air Force, by attempting to a make a WUTC Certificate a 'responsiveness' criteria, rather than a 'responsibility' criteria, unlawfully precluded the SBA from exercising authority to make the responsibility determination as Congress intended." Blue Dot Energy, slip op. at 20. According to the Court of Federal Claims, "under the HUBZone Small Business Program, it is the SBA, not the Air Force, that has the authority '[t]o certify to Government procurement officers . . . with respect to all elements of responsibility . . . .'" Id. at 19 (citing 15 U.S.C. § 637(b)(7)). For example, 48 C.F.R. 19.602-1, provides that,

> Upon determining and documenting that an apparent successful small business offeror lacks certain elements of responsibility . . . , the contracting officer shall—
> (1) Withhold contract award . . . and
> (2) Refer the matter to the cognizant SBA Government Contracting Area Office . . . .

(Emphases added.)

This regulation, however, applies to an award that is already set-aside for an SBA program. In contrast, the initial determination to set-aside a contract for an SBA program is made by the Air Force. As described by SBA's own regulation on HUBZone,

05-5058                                      10

the contracting officer "decides if a contract opportunity for HUBZone set-aside competition exists." 13 C.F.R. 126.604 (2004). And these regulations also outline the criteria for entering the contract into HUBZone:

> If the contracting officer decides to set aside the requirement for competition restricted to qualified HUBZone SBCs, the contracting officer must:
> (1) Have a reasonable expectation after reviewing SBA's list of qualified HUBZone SBCs that at least two responsible qualified HUBZone SBCs will submit offers; and (2) Determine that award can be made at fair market price.

13 C.F.R. 126.607 (2004); see also 15 U.S.C. § 657a; Contract Mgmt., 434 F.3d at 1147-48. Thus, in making its initial decision whether to set-aside the contract for HUBZone, the Air Force must make the initial responsibility determinations about the HUBZone small business concerns. Where the Air Force determines that two or more responsible qualified HUBZone concerns will submit offers, then the award is set-aside. Where the Air Force determines, however, that fewer than two will submit offers, the Air Force is not required to set the award aside. Thus, this initial responsibility determination is not one which requires a referral or conferral with the SBA. As the Comptroller General has stated,

> we long ago recognized that the decision a contracting officer must make about potential offerors' responsibility in deciding whether to set aside a procurement is not a responsibility determination under subpart 9.1 of the FAR and therefore, when the decision is not to set aside, no referral to the SBA is required.

JT Constr. Co., Inc., No. B-254,257, 1993 WL 505803, at *4 (Comp. Gen. Dec. 6, 1993).

Further, these initial responsibility determinations are within the discretion of the Air Force. As was stated by the United States District Court for the District of Columbia, "[t]he decision whether or not to create a set-aside under this regulation is within the

discretion of the agency and will not be second-guessed by the courts 'unless an abuse of discretion is clearly shown.'" Petchem, Inc. v. United States, 99 F. Supp. 2d 50, 58 (D.D.C. 2000) (quoting Nordic Sensor Tech., Inc., No. B-282,942, 1999 WL 533611, at *1 (Comp. Gen. July 23, 1999)). Therefore, for the reasons stated, we cannot agree with the Court of Federal Claims that the Air Force unlawfully precluded the SBA from exercising authority to make the responsibility determination as Congress intended. The Air Force itself properly made the initial responsibility determinations that were necessary to determine whether the contract at Fairchild AFB needed to be set-aside for HUBZone.

Lastly, the Court of Federal Claims determined that the Air Force lacked a rational basis in deciding not to set-aside the contract for HUBZone. Specifically, it held that the Air Force lacked a rational basis in determining that it would not receive two or more responsible offers from HUBZone small business concerns. But as described above, the Air Force did rationally require a WUTC certificate when it made its decision that there existed only one responsible source. As Waste Management was the only responsible source, the Air Force had a rational basis for determining that there would be fewer than two responsible HUBZone sources. As a result, the Air Force's decision to not set-aside the contract at Fairchild AFB evinced rational reasoning and considered relevant factors.

## IV.

In sum, we conclude the Air Force properly awarded Waste Management a contract for solid waste disposal at Fairchild AFB because the Air Force was within its discretion to determine that Waste Management was the only responsible source for the

waste disposal services.  No other company held a WUTC certificate for Fairchild AFB even though nothing prevented Blue Dot from applying for such a certificate before or after learning about the Air Force's solicitation of the disposal contract.  Similarly, the Air Force itself properly made responsibility determinations about the HUBZone small business concerns, and it properly decided not to set-aside the contract at Fairchild AFB for HUBZone.  Accordingly, we find on appeal that the Air Force did not violate statutes or regulations and its decision evinced rational reasoning, and we therefore reverse. The issue of bid preparation costs is rendered moot by our decision.

No costs.