# United States Court of Appeals for the Federal Circuit

---

**STACEY HEINZELMAN,**
*Petitioner-Appellee,*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellant.*

---

2011-5127

---

Appeal from the United States Court of Federal Claims in case no. 07-VV-001, Judge Edward J. Damich

---

Decided: June 13, 2012

---

RICHARD GAGE, Richard Gage, P.C., of Cheyenne, Wyoming, argued for petitioner-appellee.

LINDSEY POWELL, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellant. With her on the brief were TONY WEST, Assistant Attorney General, and THOMAS M. BONDY.

---

Before BRYSON, PROST, and O'MALLEY, *Circuit Judges*.

O'MALLEY, *Circuit Judge.*

This case involves a dispute over the amount of compensation Petitioner Stacey Heinzelman ("Heinzelman") is entitled to receive under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to 300aa-34 ("Vaccine Act"). The Secretary of Health and Human Services ("the government") appeals the final decision of the United States Court of Federal Claims, which affirmed the special master's decision that Petitioner's compensation under the Vaccine Act should not be reduced by the amount of benefits she is eligible to receive through Social Security Disability Insurance ("SSDI"). *See Heinzelman v. Sec'y of Health & Human Servs.*, 98 Fed. Cl. 808 (2011); *Heinzelman v. Sec'y of Health & Human Servs.*, No. 07-01V, 2010 U.S. Claims LEXIS 333 (Fed. Cl. Spec. Mstr. May 18, 2010). Because we agree that SSDI benefits should not be taken into account in calculating Heinzelman's "actual or anticipated loss of earnings" under 42 U.S.C. § 300aa-15(a)(3)(A), and that SSDI does not fall within any of the categories of authorized offsets under § 300aa-15(g), we affirm.

## BACKGROUND

Heinzelman was born in 1971. On December 10, 2003, she received a flu vaccine, and within thirty days thereafter she was hospitalized for Guillain-Barre syndrome ("GBS") – a disorder affecting the peripheral nervous system.

Before Heinzelman developed GBS, she was employed full-time as a hairstylist earning $49,888 per year. At this stage in the proceedings, it is undisputed that, due to her injury, Heinzelman: (1) will never be able to work again; and (2) is eligible to receive SSDI benefits of approximately $20,000 per year.

On January 3, 2007, Heinzelman filed a petition for compensation under the Vaccine Act alleging that the flu vaccine caused her to develop GBS. In a December 2008 decision, the special master found that Heinzelman proved, by a preponderance of the evidence, that the flu vaccine caused her injury and that she was entitled to compensation. *Heinzelman v. Sec'y of Health & Human Servs.*, No. 07-01V, 2008 U.S. Claims LEXIS 434, *53-56 (Fed. Cl. Spec. Mstr. Dec. 11, 2008). That decision is not at issue on appeal.

In May 2010, the special master issued a separate ruling regarding the amount of compensation to which Heinzelman is entitled. In that decision, the special master rejected the government's argument that Heinzelman's eligibility for SSDI benefits should be considered in determining her compensation under the Vaccine Act. Specifically, the special master found that: (1) Heinzelman's anticipated SSDI income should not be taken into consideration in calculating her "actual or anticipated loss of earnings" under § 300aa-15(a)(3)(A); and (2) SSDI is not a "federal . . . health benefits program" within the meaning of § 300aa-15(g), and therefore her compensation should not be offset based on her eligibility for SSDI benefits.

On December 7, 2010, the special master entered final judgment awarding Heinzelman $1,133,046.08, plus an annuity to cover future medical expenses. Of the lump sum awarded, $900,000 was to compensate Heinzelman for her lost earnings. According to the government, Heinzelman's lost earnings award would have been roughly $316,000 less had the special master taken her anticipated SSDI benefits into account.

The government moved the Court of Federal Claims to review the special master's final judgment awarding

damages, which incorporated both the December 2008 decision granting compensation under the Vaccine Act, and the May 2010 ruling regarding offset. In June 2011, the Court of Federal Claims affirmed the special master's decisions in their entirety. In relevant part, the court agreed that SSDI benefits should not be taken into account in determining Heinzelman's compensation under § 300aa-15. The government timely appealed that issue to this court, and we have jurisdiction pursuant to 42 U.S.C. § 300aa-12(f).

## DISCUSSION

The sole question on appeal is whether a petitioner's compensation under the Vaccine Act should be reduced by the amount of SSDI benefits she is eligible to receive. Resolution of this question involves the interpretation and interplay between two provisions of the Vaccine Act: § 300aa-15(a)(3)(A) – which provides compensation for lost earning capacity – and § 300aa-15(g) – which offsets the compensation award where the petitioner is expected to receive payments under certain other programs. Because statutory interpretation is a question of law, we review the trial court's determination *de novo*. *Aull v. Sec'y of Health & Human Servs.*, 462 F.3d 1338, 1342 (Fed. Cir. 2006).

Where, as here, the petitioner has suffered a vaccine-related injury after attaining the age of eighteen, and her earning capacity is impaired by that injury, her compensation under the Vaccine Act includes "compensation for actual and anticipated loss of earnings determined in accordance with generally recognized actuarial principles and projections." 42 U.S.C. § 300aa-15(a)(3)(A). The Act provides, however, that the Vaccine Program is "not primarily liable," and that an award under the Vaccine Act is offset to the extent the petitioner is entitled to

receive payments from certain specified programs. Specifically, § 15(g) provides that:

> Payment of compensation under the Program shall not be made for any item or service to the extent that payment has been made, or can reasonably be expected to be made, with respect to such item or service (1) under any State compensation program, under an insurance policy, or under any Federal or State health benefits program (other than under title XIX of the Social Security Act [42 USCS §§ 1396 et seq.]) [Medicaid],[1] or (2) by an entity which provides health services on a prepaid basis.

42 U.S.C. § 300aa-15(g).

On appeal, the government argues that the special master and the Court of Federal Claims erred in concluding that SSDI benefits should not be considered in determining compensation under the Vaccine Act. Specifically, the government argues that Heinzelman's eligibility for SSDI benefits should have been considered either as part of the "lost earnings" calculation under § 300aa-15(a)(3)(A) or as an offset under § 15(g). In the alternative, the government argues that § 300aa-15 of the Vaccine Act is ambiguous, and that principles of sovereign

---

[1] The exception "(other than under title XIX of the Social Security Act)," *i.e.* Medicaid, was added to § 15(g) in 1989. Congress added this language to "specify that Medicaid is to be considered a second payor for health care costs to the Vaccine Injury Compensation Trust Fund. Medicaid serves as a second payor to all other sources of payment for health care, including private litigation, and the compensation program is amended to follow that precedent." H.R. Rep. No. 101-386, at 517 (1989) (Conf. Rep.), *reprinted in* 1989 U.S.C.C.A.N. 3018, 3120.

immunity weigh against exposing the federal government to further liability.

In response, Heinzelman argues that: (1) § 300aa-15(a)(3)(A) does not authorize offsets to a petitioner's lost wages award; (2) Congress did not include SSDI as one of the specifically enumerated offsets in § 15(g); and (3) the plain language of the Vaccine Act is unambiguous, such that the doctrine of sovereign immunity does not compel a reading of the Act which is sympathetic to the government's views. For the reasons explained below, we agree with Heinzelman on each point.

## A. Section 15(a)(3)(A)

As noted, when certain qualifications are satisfied, § 300aa-15(a)(3)(A) authorizes "compensation for actual and anticipated loss of earnings." The question of whether "lost earnings" requires a deduction for SSDI benefits is a question of statutory interpretation, and our analysis begins with the language of the statute. *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552, 554 (Fed. Cir. 1994) (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)). When interpreting a statute, however, the court "must look not only at the particular statutory provision in question, but also at the language and design of the statute as a whole." *Id.* (citing *K Mart Corp.*, 486 U.S. at 291). It is a well-settled principle of statutory interpretation that a "statute is to be construed in a way which gives meaning and effect to all of its parts." *Saunders v. Sec'y of Health & Human Servs.*, 25 F.3d 1031, 1035 (Fed. Cir. 1994) (citing *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 36 (1992) (noting the "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect")).

Here, the Court of Federal Claims began its analysis by noting that "loss of earnings" is not defined in the statute. The court looked to Black's Law Dictionary, which defines "earnings" as "[r]evenue gained from labor or services, from the investment of capital, or from assets." *Heinzelman*, 98 Fed. Cl. at 816 (quoting *Black's Law Dictionary* 548 (9th ed. 2009)). Using this definition, the court found that the starting point for the lost earnings calculation "is the amount of earnings during the past, present, and/or future loss periods." *Id.*

Looking to the relationship between § 300aa-15(a)(3)(A) and § 300aa-15(g), the Court of Federal Claims agreed with the special master that § 15(a) authorizes compensation, while § 15(g) takes it away in certain situations. Specifically, the court found that: (1) the focus of § 15(a)(3)(A) "is to establish a baseline for compensation: earnings not earned because of the vaccine injury"; and (2) "SSDI provides a degree of mitigation of lost earnings, but does not change the calculation thereof." *Id.* Accordingly, the Court of Federal Claims concluded that Heinzelman's SSDI benefits "should not be considered in the first instance" when calculating her "lost earnings" under § 15(a)(3)(A).[2] *Id.* at 817.

---

[2] The Court of Federal Claims also pointed to language in the legislative history providing that: "The Committee does not intend that the award be reduced because of other government benefits for which the injured person might be eligible." *Heinzelman*, 98 Fed. Cl. at 817 (citing H.R. Rep. No. 908, 99th Cong., 2d Sess. 1986, *reprinted in* 1986 U.S.C.C.A.N. 6344, 6362). As the government argues, however, this language is inapplicable as it appears to relate solely to awards for children injured by vaccines, and there is a specific formula for calculating lost earnings for children because they lack any meaningful work history.

On appeal, the government argues that SSDI income must be considered in calculating Heinzelman's "actual and anticipated loss of earnings" under § 15(a)(3)(A) because she "suffers no such loss to the extent that SSDI income received for the vaccine-related injury would substitute for income that [she] would otherwise have received from an employer." Appellant's Br. 13. Because Heinzelman previously earned $49,888 per year and is eligible for $20,412 per year in SSDI, the government claims that she has an anticipated loss of earnings of only $29,476 per year. According to the government, this interpretation is consistent with the Vaccine Act's goal of placing petitioners in the position they would have been, but for the injury.

In support of its position, the government relies primarily on a special master's decision: *Jelly v. Secretary of Health & Human Services*, No. 94-646V, 1998 U.S. Claims LEXIS 87 (Fed. Cl. Spec. Mstr. Apr. 6, 1998).[3] In *Jelly*, the special master addressed whether, in calculating the

---

[3]    The government also cites *Zatuchni v. Secretary of Health & Human Services*, No. 94-58V, 2006 U.S. Claims LEXIS 127 (Fed. Cl. Spec. Mstr. May 10, 2006) and *Ireton v. Secretary of Health & Human Services*, No. 90-3975V, 1994 U.S. Claims LEXIS 168 (Fed. Cl. Spec. Mstr. Aug. 11, 1994) – neither of which is particularly helpful to its position on this point. For example, in *Zatuchni*, the government argued that the petitioner's lost earnings under § 15(a)(3)(A) needed to be adjusted for income taxes, employment taxes, and SSDI payments petitioner received because she was unable to work. 2006 U.S. Claims LEXIS 127, at *20-21. Because the petitioner "agreed that such adjustments must be made," the issue was never adjudicated. *Id.* at *21. Accordingly, *Zatuchni* – which was a special master's decision – is of little probative value here. The government's reliance on *Ireton* is misplaced because, as discussed below, that case refers to § 15(g).

petitioner's "lost earnings" under § 300aa-15(a)(3), he should reduce the petitioner's *gross* earnings by the amount of taxes she likely would have paid had she received those earnings. 1998 U.S. Claims LEXIS 87, at *3. At the outset, the special master stated that "the obvious purpose of an award for 'lost earnings' under the Program is to put the petitioner in the same financial situation where she would have been 'but for' the vaccine-caused injury." *Id.* at *5. Given this purpose, the special master noted that the tax reduction seemed "conceptually appropriate, in order to ensure that petitioner will receive only those amounts that she would have actually received had she been able to work." *Id.* at *5-6. After reviewing the statutory context, the special master concluded that, "when an award for lost earnings is made under § 300aa-15(a)(3)(A) . . . only 'after-tax' lost earnings should be awarded." *Id.* at *17.

According to the government, "[j]ust as taxes must be taken into account in determining the amount of a petitioner's lost wages, so must substitute income be considered." Appellant's Reply 4. To the contrary, although this court has recognized that it is appropriate to deduct federal and state income taxes when "determining a lost earnings award under the Vaccine Act" – *see Euken v. Secretary of Health & Human Services*, 34 F.3d 1045, 1048 (Fed. Cir. 1994) – it does not follow that SSDI benefits should likewise be deducted. Indeed, nothing in the statute supports equating the two.

First, in calculating "lost earnings," it makes sense to consider net rather than gross earnings, since the amount received at any given point in an earnings history would necessarily be less taxes owed or deducted. This is consistent with the "generally recognized actuarial principles" incorporated into § 15(a)(3)(A). SSDI is not something which is netted out so as to reflect actual earnings, how-

ever; it is a compensatory figure designed to compensate for a loss of actual earnings. Thus, if SSDI is to be considered at all it would need to be characterized as an offset to earnings, an offset which would be deducted under § 15(g).

Looking to the overall structure of the Vaccine Act, we agree with the special master and the Court of Federal Claims that § 15(a) gives compensation while § 15(g) provides for offsets where compensation is made via one of the enumerated programs. This reading flows from the text and structure of the statute, and is consistent with the underlying purpose of the Vaccine Act, which is "to provide compensatory damages for vaccine-related injuries." *Saunders*, 25 F.3d at 1035.

Treating SSDI payments as a deduction under § 15(a) is inconsistent with the well-established principle that we must "give effect, if possible, to every clause and word of a statute and should avoid rendering any of the statutory text meaningless or as mere surplusage." *Sharp v. United States*, 580 F.3d 1234, 1238 (Fed. Cir. 2009) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks omitted)). If, as the government argues, compensation program payments are factored into the lost earning calculation under § 15(a)(3)(A), then there would be no need for a separate provision – § 15(g) – that specifically identifies the types of offsets that reduce the amount of compensation recoverable under the Vaccine Act. We are also mindful that we should "avoid construing a statute in a way which yields an absurd result." *Hellebrand v. Sec'y of Health & Human Servs.*, 999 F.2d 1565, 1570-71 (Fed. Cir. 1993). The government's position is at odds with this principle, and we decline to adopt an approach that would have payments under certain compensation programs reduce the amount of lost earnings under § 15(a)(3)(A), while others – such as state workers'

compensation program awards – are deducted under § 15(g).  Simply, there is no textual support for the government's position that SSDI payments should reduce Heinzelman's lost earnings compensation under § 15(a)(3)(A).

Finally, the government argues that the legislative history supports its position that § 300-15(a)(3)(A) should take into account SSDI benefits.  Specifically, the government points to the following language in the legislative history: "[p]ayment of compensation is not to be made for items or services for which payment has been made or can be expected to be made by other public or private entities."  H.R. Rep. No. 99-908, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363.  The government omits the very next sentence, however, which states: "Thus, if an insurance program or a health maintenance organization pays or is obligated to pay for health care services, the Program is not to pay for these same services."  *Id.*  In other words, closer review of the portion of the legislative history cited reveals that it does not specifically address lost earnings under § 15(a)(3)(A), and instead is geared towards the types of insurance programs and health maintenance organizations discussed under § 15(g).  Accordingly, the legislative history does not alter our reading of the plain language of the statute.  *See Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 396 (Fed. Cir. 1990) (noting that, where the "statutory language is unambiguous, we consider the legislative history of the Act, but only to determine whether a clear intent contrary to the plain meaning exists").

Because neither the text of the Vaccine Act nor the legislative history suggests that SSDI benefits should be deducted from a lost earning calculation under § 15(a)(3)(A), we agree with the Court of Federal Claims that Heinzelman's eligibility for SSDI benefits should not

be considered when deciding her "loss of earnings" under that provision.

## B. Section 15(g)

Given our conclusion that SSDI benefits do not reduce the amount of lost earnings under § 15(a), we turn our attention to § 15(g), which enumerates when a petitioner is not entitled to compensation under the Vaccine Program because certain other programs provide compensation. In relevant part, the statute requires an offset for payments made "under any State compensation program, under an insurance policy, or under any Federal or State health benefits program" other than Medicaid. § 300aa-15(g).[4] It is undisputed that the offset provision in § 15(g) only applies here if SSDI benefits qualify as a "Federal . . . health benefits program." *See* Oral Argument at 5:20, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2011-5127/all ("I do believe that is the only category that federal social security disability insurance benefits would fall into.").[5]

---

[4]    The statute provides, in part, that "[p]ayment of compensation under the Program shall not be made for any *item or service*" to the extent it has been made "under any State compensation program, under an insurance policy, or under any Federal or State health benefits program." § 300aa-15(g) (emphasis added). When asked at oral argument whether wages are included within the reference to "any item or service," counsel for the government responded: "Yes your honor. I do believe that the item or service language is broad enough to include the benefit at issue here." Oral Argument at 1:50, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2011-5127/all. Accordingly, the government waived any argument that lost wages do not qualify as an "item or service" under § 15(g).

[5]    At oral argument, counsel further indicated that the government "is not taking the position that SSDI . . .

The Court of Federal Claims affirmed the special master's decision that SSDI does not qualify as a "Federal . . . health benefits program." Specifically, the court found that: (1) SSDI is not a health benefits program "simply because it requires an applicant to have a physical disability"; (2) unlike Medicare, "SSDI does not provide applicants with health insurance benefits"; (3) SSDI compensates applicants for loss of income since they are disabled and no longer able to work; and (4) "SSDI does not necessarily pay for an applicant's medical expenses." *Heinzelman*, 98 Fed. Cl. at 817. The court further noted that, just because § 15(g) exempts one Title of the Social Security Act – Medicaid – "does not mean that all other Titles should be considered 'Federal . . . health benefits program' offsets." *Id.* Accordingly, the court agreed with the special master that Heinzelman's SSDI payments should not offset the compensation she is entitled to receive under § 15(a).

On appeal, the government contends that SSDI is a "Federal . . . health benefits program" because it is related to an individual's health status. In particular, the government argues that: (1) Congress acknowledged a relationship between SSDI and health status, since an individual becomes eligible to receive Medicare benefits after twenty-four months of eligibility for SSDI benefits; and (2) the "Court of Federal Claims' narrow reading of the phrase 'health benefits program' is . . . inconsistent with the principle that the Vaccine Program is generally a secondary payer." Appellant's Br. 19. The government's arguments are not well-taken.

As the Court of Federal Claims recognized, "SSDI is not a 'Federal . . . health benefits program' simply because

---

comes under the rubric of an insurance policy under (g)." *See* Oral Argument at 21:22.

it requires an applicant to have a physical disability." *Heinzelman*, 98 Fed. Cl. at 817. This is particularly true given the nature of SSDI benefits. Although payment of SSDI benefits is predicated on the existence of a medical disability, SSDI compensation is unlike Medicare, Medicaid, or other "health benefits," in that it is paid to beneficiaries as compensation for their inability to earn income. The amount of compensation is based on the applicant's earning history – not on the severity of her underlying medical condition. *See Heinzelman*, 2010 U.S. Claims LEXIS 333, at *4 ("Based upon Ms. Heinzelman's earning history, the amount of SSDI payment for which Ms. Heinzelman is eligible is $1,701 per month."). And, the fact that a person becomes eligible for Medicare after twenty-four months of SSDI eligibility actually cuts against the government's position, because it suggests that there are two separate programs: Medicare for health insurance and SSDI for compensation.

According to the government, Vaccine Program awards have consistently "been offset based on a petitioner's eligibility for other government benefits." Appellant's Br. 19-20. To support this argument, the government directs our attention to *Ireton v. Secretary of Health & Human Services*, No. 90-3975V, 1994 U.S. Claims LEXIS 168 (Fed. Cl. Spec. Mstr. Aug. 11, 1994), which is readily distinguishable on its facts.[6]

---

[6] The government also points to *Metzger v. Secretary of Health & Human Services*, No. 89-74, 1990 U.S. Cl. Ct. LEXIS 248 (Cl. Ct. Spec. Mstr. June 15, 1990). In *Metzger*, there was evidence that the petitioner would be entitled to receive monthly Social Security Disabled Adult Child's benefits which would "cover the costs of food, lodging and other basic living expenses." *Id.* at *29. To avoid double recovery, the special master reduced the petitioner's amount of residential placement benefits

Although it appears that the government cites *Ireton* as an example of a case in which a special master offset a Vaccine award due to eligibility for workers' compensation, careful review of the decision reveals that it was focused primarily on a separate issue: whether the petitioner was entitled to assert a Vaccine Act claim where she previously filed a claim for benefits in a specialized workers' compensation tribunal. *See Ireton*, 1994 U.S. Claims LEXIS 168, at *7. The special master concluded that the petitioner's previous workers' compensation filing did not qualify as a "civil action," and thus did not preclude her from asserting a claim under the Vaccine Act. *Id.* As additional support for his decision, the special master noted that "any benefits that a petitioner has gained from a workers' compensation system will simply act as an 'offset' to reduce the *amount* of the Program award." *Id.* at *25.

The government's reliance on *Ireton* is misplaced. Unlike SSDI benefits, which are not included in § 15(g), workers' compensation is a "State compensation program" which is specifically identified as an offset in the statute. Indeed, at oral argument, counsel for the government agreed that workers' compensation is a "State compensation program" under § 15(g). *See* Oral Argument at 15:07.

Although there is some force to the government's argument that the Vaccine Program is generally a secon-

---

under the Vaccine Act by the amount of residential benefits he would receive in Disabled Adult Child's benefits. *Id.* That case – which is not binding on this court – is not particularly helpful here because: (1) residential placement benefits are governed by § 15(a)(1) rather than § 15(a)(3), and do not involve compensation for lost income; and (2) the special master did not explain the analysis under § 15(g).

dary payor, we find that this general principle is insufficient to overcome the lack of textual support for the government's position in this appeal. Looking to the language of § 15(g), Congress specifically enumerated the types of funding sources that would offset compensation awards. In relevant part, Congress included payments under a "State compensation program" or "any Federal or State health benefits program." If Congress had wanted to include SSDI benefits as an offset under § 15(g), it could have done so.

For example, because SSDI benefits are compensatory in nature, Congress could have said that payments under "any *Federal or* State compensation program" reduce the amount of compensation under the Vaccine Program. Congress chose, however, to use only the word "State" – not "Federal." It is well-established that, "[w]here Congress includes particular language in one section of a statute but omits it in another . . ., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). While Congress certainly knew how to include *both* state and federal programs when it wanted to, as it used the phrase "Federal or State health benefits program" later in the same provision, it declined to do so with respect to compensation programs. *See Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 132 S. Ct. 1670, 1682 (2012) ("So if we needed any proof that Congress knew how to say 'not any' when it meant 'not any,' here we find it."); *see also Bohac v. Dep't of Agric.*, 239 F.3d 1334, 1342 (Fed. Cir. 2001) ("This comparison illustrates that Congress knows how to provide damages for non-pecuniary losses, including pain and suffering, when it so desires.").

Based on the foregoing, we agree with the Court of Federal Claims that SSDI does not constitute a "Federal . . . health benefits program" under § 15(g). While we recognize that § 15(g) was designed to avoid overcompensation in certain circumstances where payments are made from other programs, we decline to read offsets into the statutory text that were not specifically included therein. Because nothing in the statute provides that SSDI benefits should be deducted from a compensation award under the Vaccine Act, we conclude that Heinzelman's anticipated SSDI payments should not offset the compensation she was granted under § 15(a).

## C.  Sovereign Immunity

In the alternative, the government argues that the Vaccine Act is a limited waiver of sovereign immunity such that, if the meaning of § 300aa-15 is unclear, it should be construed narrowly to limit the government's waiver of immunity. *See United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992) ("[T]he Government's consent to be sued must be construed strictly in favor of the sovereign . . . and not enlarged . . . beyond what the language requires . . ." (citation and internal quotations omitted)). Both the special master and the Court of Federal Claims found that, because there is no ambiguity in the statute, the doctrine of sovereign immunity does not apply. We agree.

Because the plain language of the statute reveals that Congress did not include SSDI benefits as an offset to compensation under the Vaccine Act, resort to sovereign immunity principles is neither necessary nor proper. *See Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 590 (2008) ("There is no need for us to resort to the sovereign immunity canon because there is no ambiguity left for us to construe."); *see also Zatuchni v. Sec'y of Health & Human*

*Servs.*, 516 F.3d 1312, 1323 (Fed. Cir. 2008) ("[W]e do not find that the government has offered a 'plausible' reading of the statute . . . as endorsement of its position would require us to ignore what we see as the plain reading of 42 U.S.C. § 300aa-15(a) and (b) . . . . The doctrine of sovereign immunity does not require such a result." (citation omitted)). Accordingly, the government's reliance on the doctrine of sovereign immunity is misplaced.

CONCLUSION

For the foregoing reasons, and because we find that the government's remaining arguments are without merit, the final judgment of the Court of Federal Claims is affirmed.

**AFFIRMED**