# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## OFFICE OF SPECIAL MASTERS
### No. 10-813V
### Filed: June 24, 2014
### For Publication

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
DAVID HELMAN,                      *
                                   *
              Petitioner,          *        Offset; Compensation;
       v.                          *        Disability Insurance; Lost Wages
                                   *
SECRETARY OF HEALTH                *
AND HUMAN SERVICES,                *
                                   *
              Respondent.          *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

## RULING ON PRIVATE DISABILITY INSURANCE OFFSET[1]

**Vowell,** Chief Special Master:

At a telephonic status conference on June 11, 2014, counsel for both parties requested a ruling concerning how §§ 15(g) and (h) of the National Childhood Vaccine Injury Act [the "Vaccine Act" or "Program"][2] pertain to the present case. In particular, the parties want clarification regarding whether the amount of coverage for future lost wages under petitioner's private long term disability insurance will be reduced by a Vaccine Act award.

Pursuant to §§ 15(a)(1)-(4), compensation awarded under the Vaccine Act shall include "compensation for medical, rehabilitation, counseling, special education, and vocational training expenses; diminished earning capacity [lost wages]; pain and suffering; and $250,000 for vaccine-related deaths." *Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1074 (2011). With regard to lost wages, "the focus of § 15(a)(3)(A) 'is to establish a baseline for compensation.'" *Heinzelman v. Sec'y, HHS*, 681 F.3d 1374, 1377 (Fed. Cir. 2012) (quoting *Heinzelman v. Sec'y, HHS*, 98 Fed. Cl. 808, 816 (2011)).[3] Compensation available under § 15(a) is circumscribed by § 15(d), which

---

[1] Because I have designated this ruling to be published, petitioner has 14 days to request redaction of any material "that includes medical files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the entire decision will be publicly available. 42 U.S.C. § 300aa12(d)(4)(B).

[2] The National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 *et seq.* Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.
[3] In *Heinzelman*, the Federal Circuit held that SSDI benefits should not be considered in calculating "lost earnings" in the first instance, as they are designed to compensate for the loss of actual earnings. If

provides that compensation may not include punitive damages, and–except with respect to payments for vaccine related death or lost wages–may not include "compensation for other than the health, education, or welfare of the person who suffered the vaccine-related injury with respect to which the compensation is paid." §§ 15(d)(1), (2).

All types of compensation authorized by § 15(a) and not precluded by § 15(d) are subject to the limitation of § 15(g),[4] which provides that the program is a secondary payer to all sources except Title XIX of the Social Security Act (*i.e.* Medicaid). *See Heinzelman*, 681 F.3d at 1377 ("§ 15(a) authorizes compensation, while § 15(g) takes it away in certain situations."). Section 15(g) sets forth the types of compensation offset that must be applied to a program award. *Id.* at 1380. An offset in the award is required for payments made, or reasonably expected to be made, "under any State compensation program, *under an insurance policy*, or under any Federal or State health benefits program" other than Medicaid. § 15(g) (emphasis added).[5]

It is a well-settled principle of statutory interpretation that "'[w]hen . . . the terms of a statute [are] unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances.'" *Glaxo Operations UK Ltd. V. Quigg*, 894 F.2d 392, 395 (Fed. Cir. 1990) (quoting *United States v. James*, 478 U.S. 597, 606 (1986)). Judicial officials should not add words to a statute–a court's "duty is limited to interpreting the statute as it was enacted . . . ." *Beck v. Sec'y, HHS*, 924 F.2d 1029, 1034 (Fed. Cir. 1991). *See also, Kyocera Wireless Corp. v. Int'l Trade Comm'n,* 545 F.3d 1340, 1356 (Fed. Cir. 2008); *Adam Sommerrock Holzbau, GmbH v. United States*, 866 F.2d 427, 429 (Fed. Cir. 1989).

Section 15(g) does not limit the type of insurance payment requiring an offset to health insurance policies. In *Heinzelman*, the court held that Social Security Disability

---

anything, "it would need to be characterized as an offset to earnings. . . deducted under § 15(g)." 681 F.3d at 1379.

[4] § 15(g) Program not primarily liable: Payment of compensation under the Program shall not be made for any item or service to the extent that payment has been made, or can reasonably be expected to be made, with respect to such item or service
    (1)    under any State compensation program, under an insurance policy, or under any Federal or State health benefits program (other than under title XIX of the Social Security Act [42 U.S.C. 1396 et seq.]), or
    (2)    by an entity which provides health services on a prepaid basis

[5] *See also Ireton v. Sec'y, HHS*, No. 90-3975V, 1994 WL 461995, at *8 (Fed. Cl. Spec. Mstr. Aug. 11, 1994) ("§ 15(g)(1) . . . specifies that to the extent that the petitioner has received benefits, or can expect to receive benefits, from 'any State compensation program,' the Program will not provide duplicative benefits."); *Glossick v. Sec'y, HHS*, No. 90-895V, 1991 WL 241844, at *1 (Cl. Ct. Spec. Mstr. Oct. 24, 1991) ("Because the Program is intended as a 'secondary' payor to such insurance or benefit programs, excluded from the Program award must be any amount for services which can 'reasonably be expected' to be otherwise paid."); *Watkins v. Sec'y, HHS*, No. 88-66V, 1990 WL 608695, at *9 (Cl. Ct. Spec. Mstr. May 10, 1990) ("The Act provides that it is not primarily liable (except with regard to Title XIX of the Social Security Act—Medicaid) and, therefore, the payment of compensation shall not be made 'for any item or services' to the extent payment can be reasonably expected to be made under an insurance policy or under a state or federal compensation program.").

["SSDI"] benefits were not a required offset under 15(g), because they did not fit the definition of "Federal . . . *health benefits*," as SSDI compensation is based on earning history, not severity of medical condition. 681 F.3d at 1381. Furthermore, because 15(g) refers only to a "*State* compensation program" as an offset lost wages paid under SSDI were not a type of compensation program entitled to be offset. *Id.* at 1382. The court noted that Congress could have chosen to include SSDI as a "compensation program" by saying that payments under "any *Federal or State* compensation program" reduce Vaccine Act compensation, but did not include the word "Federal" in the statute. *Id.* at 1382. Similarly, with regard to offsets for private insurance payments from "an insurance policy," the plain language of the statute does not limit such offsets to payments from a "*health* insurance policy." § 15(g).

Because health insurance policies payments commonly overlap with compensation otherwise available under the Vaccine Act, § 15(h)[6] specifies that all "health insurance carriers, prepaid health plans, and benefit providers" (except for Medicaid), are prohibited from making payment secondary to the payment of compensation under the Vaccine Act. *Hussey for Hussey v. Sec'y, HHS*, No. 90-896V, 1991 WL 59454, at *5 (Cl. Ct. Spec. Mstr. Apr. 4, 1991). While § 15(h) does not specifically refer to disability insurance carriers–a less common type of insurance than health insurance–it does not in any way limit the "secondary payer" status of the Vaccine Act that § 15(g) provides above *all* insurance policies.

The plain language of the Vaccine Act reflects that the Program is a secondary payer to any insurance policy. It does not limit offsets to health insurance policies. This interpretation is consistent with the "secondary payer" role for other items of compensation, such as past and future medical expenses, in the statutory scheme. **I therefore rule that the Vaccine Act is a secondary payer to petitioner's disability insurance. Any Program award must be reduced by the amount to which petitioner is entitled under the disability policy. This amount must be determined before the Program award can be made.**

**IT IS SO ORDERED.**

**/s Denise K. Vowell**
Denise K. Vowell
Chief Special Master

---

[6] §15(h) Liability of health insurance carriers, prepaid health plans, and benefit providers: No policy of health insurance may make payment of benefits under the policy secondary to the payment of compensation under the Program and—
    (1)    no State, and
    (2)    no entity which provides health services on a prepaid basis or provides health benefits, may make the provision of health services or health benefits secondary to the payment of compensation under the Program, except that this subsection shall not apply to the provision of services or benefits under title XIX of the Social Security Act [42 U.S.C. 1396 et seq.].