NORFOLK DREDGING COMPANY, INC., Plaintiff–Appellee,

v.

UNITED STATES, Defendant–Appellant,

and

Bean Stuyvesant, L.L.C., Defendant–Appellant.

Nos. 04–5040, 04–5041.

United States Court of Appeals, Federal Circuit.

DECIDED: July 7, 2004.

Rehearing En Banc Denied Aug. 13, 2004.

---

Domenique Kirchner, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant United States. With her on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Deborah A. Bynum, Assistant Director.

Jeffrey F. Lawrence, Sher & Blackwell, L.L.C., of Washington, DC, argued for defendant-appellant Bean Stuyvesant, L.L.C. With him on the brief was Heather M. Spring.

Before NEWMAN, RADER, and LINN, Circuit Judges.

LINN, Circuit Judge.

Bean Stuyvesant L.L.C. ("Bean") and the United States ("Government") (collectively, "Appellants") appeal from a decision of the Court of Federal Claims granting summary judgment in favor of Norfolk Dredging ("Norfolk") and enjoining the Army Corps of Engineers ("Corps") from awarding a dredging contract to Bean. *Norfolk Dredging Co. v. United States*, 58 Fed.Cl. 741 (2003) ("*Norfolk II*"). Because the Court of Federal Claims erred in construing the statutory exception to 46 U.S.C. app. § 292 and in concluding that Bean's activities did not fall within the scope of the statutory exception, we reverse and remand to the Court of Federal Claims with instructions to enter summary judgment in favor of Appellants.

Michael H. Payne, Starfield & Payne, P.C., of Fort Washington, PA, argued for plaintiff-appellee. With him on the brief was Joseph A. Hackenbracht. Of counsel on the brief was Guilford D. Ware, Crenshaw, Ware & Martin, of Norfolk, VA.

## BACKGROUND

This is a bid protest action challenging the legality of Bean's performance of dredging operations under Corps solicitation no. DACW54–03–B–0011 ("the contract"). Bean is a limited liability company organized under Delaware law. Bean

is 50% owned by Bean Dredging L.L.C., a U.S. company, and 50% owned by Stuyvesant Dredging Co. ("SDC"), which is in turn wholly owned by a Dutch corporation. Thus, Bean is 50% foreign owned. The MERIDIAN is a non-hopper dredge owned by a U.S. company, Bean Meridian L.L.C. ("Bean Meridian"), and is documented under 46 U.S.C. ch. 121. Hopper dredges are self-propelled vessels that pump dredged material from the channel floor and store the material in containers called hoppers aboard the vessel. Non-hopper vessels are unable to store the dredged material on board; the dredged material must be piped to a separate vessel or location.

On August 8, 2003, the Corps issued bid solicitation no. DACW54–03–B–0011 for dredging in the vicinity of Morehead City Inner Harbor, North Carolina. Because of environmental concerns, the placement of dredged material on the beaches was to be completed between November 2003 and April 2004. Bean was the low bidder, and proposed performing the work using the MERIDIAN, a non-hopper dredging vessel chartered from Bean Meridian. Norfolk was the second lowest bidder.

Norfolk filed an expedited bid protest action in the Court of Federal Claims challenging the legality of Intervenor Bean's performance of the dredging operations in alleged violation of the terms of § 5501 of the Oceans Act of 1992. The parties agreed that Bean should be initially awarded the contract, subject to termination in the event the Court of Federal Claims should find that Bean was not eligible to perform.

The Court of Federal Claims observed that the Foreign Dredge Act of 1906, as amended by § 5501 of the Oceans Act of 1992 (codified at 46 U.S.C. app. § 292), bars foreign-built dredges from operating in U.S. waters. *Norfolk II*, 58 Fed.Cl. at 743. However, the note following 46 U.S.C. app. § 292 contains exceptions that include SDC and any entity in which it owns an interest. *Id.* at 744. Thus, the issue was whether Bean could legally charter a U.S.-built and documented non-hopper dredge under the statutory exception. *Id.* The court construed the statutory exception to 46 U.S.C. app. § 292 to exclude Bean's charter of the non-hopper dredge MERIDIAN pursuant to the contract, and thus Bean was barred from performing the contract by § 5501 of the Oceans Act of 1992. Following the court's denial of the Government's motion for reconsideration, Bean and the Corps entered into a no-cost termination of the contract.

Bean and the Government timely appealed from the Court of Federal Claims' October 14, 2003 order, *Norfolk Dredging Co. v. United States*, 58 Fed.Cl. 167 (2003) ("*Norfolk I*"); November 26, 2003 order on motion for reconsideration; and November 26, 2003 Corrected Opinion and Order, *Norfolk II*. We have jurisdiction from a final judgment of the Court of Federal Claims pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

### I. Standard of Review

"This court reviews the Court of Federal Claims' grant of summary judgment de novo." *Billings v. United States*, 322 F.3d 1328, 1332 (Fed.Cir.2003). The underlying issue of statutory construction is a question of law we review de novo. *Id.*

### II. Analysis

#### A. Statutory Construction

The Oceans Act of 1992 ("the Act") changed the law regarding the chartering of dredging vessels in U.S. waters. The Act required that a charterer of a dredging vessel in U.S. waters be at least 75%

owned by U.S. citizens. Oceans Act of 1992, § 5501(a)(1), Pub. L. No. 102–587, 106 Stat. 5084, *codified at* 46 U.S.C. app. § 292(a)(2) (2000) (citing the 75% domestic ownership requirements of 46 U.S.C. app. § 802). However, the Act included the following exceptions to this basic rule:

The amendment ... does not apply to—
(A) (i) the vessel STUYVESANT, official number 648540;

(ii) any other hopper dredging vessel documented under chapter 121 of title 46, United States Code before the effective date of this Act and chartered to Stuyvesant Dredging Company or to an entity in which it has an ownership interest; however, this exception expires on December 3, 2022 or when the vessel STUYVESANT ceases to be documented under chapter 121, whichever first occurs; and

(iii) any other non-hopper dredging vessel documented under chapter 121 and chartered to Stuyvesant Dredging Company or to an entity in which it has an ownership interest, as is necessary (a) to fulfill dredging obligations under a specific contract, including any extension periods; or (b) as temporary replacement capacity for a vessel which has become disabled but only for so long as the disability shall last and until the vessel is in a position to fully resume dredging operations; however, this exception expires on December 8, 2022 or when the vessel STUYVESANT ceases to be documented under chapter 121, whichever first occurs....

*Id.* § 5501(a)(2), *codified at* 46 U.S.C. app. § 292 note (2000) (respectively, "exceptions (A)(i)", "(A)(ii)" and "(A)(iii)").

It is undisputed that Bean, the charterer of the non-hopper vessel MERIDIAN, was 50% owned by SDC, a foreign enterprise, and thus is prohibited from chartering vessels for dredging in U.S. waters under the terms of 46 U.S.C. app. § 292(a)(2). *Norfolk II,* 58 Fed.Cl. at 744. The parties principally dispute whether Bean falls into one of the statutory exceptions—(A)(i), (ii), or (iii)—enumerated in the note to 46 U.S.C. app. § 292. The applicability of exception (A)(iii) pertaining to non-hopper dredges is principally contested.

The Court of Federal Claims found that the three statutory exceptions in (A)(i)-(iii) relating to the vessel STUYVESANT, hopper vessels, and non-hopper vessels in § 5501(a)(2) of the Act, were amenable to construction based on their plain meaning. *Norfolk II,* 58 Fed.Cl. at 752. The court concluded that the "only construction that gives effect to all of the conditions set forth in the exception ... and reads all of subsections (A)(i), (ii), and (iii) together" was the following:

Under subsection (A)(iii), Stuyvesant Dredging Company or an entity in which it has an interest can utilize any non-hopper, even if not yet built, to fulfill contracts entered into utilizing STUYVESANT or any other qualified hopper. In other words, the non-hoppers would be supplemental to the dredging activities involving hoppers. Also, a non-hopper so chartered can be used as a temporary replacement for a hopper or a non-hopper. The latter event would occur when a contract is being performed only by a hopper or a non-hopper that has become disabled.

*Id.* at 753. The court later noted that
[a]n arrangement would satisfy [exception (A)(iii)] only if the chartered non-hopper vessel "is necessary ... to fulfill dredging obligations under a specific contract," *supplementing a hopper vessel documented as of 1992,* "including any extension periods," or to complete temporary replacement of a hopper or non-hopper performing a hopper contract.

*Id.* at 755 (quoting Oceans Act of 1992, § 5501(a)(2)(A)(iii)) (emphasis added).

Appellants argue that the Court of Federal Claims erred in interpreting the statute such that Bean's chartering of the non-hopper dredge MERIDIAN did not fall into exception (A)(iii). They allege that the Court of Federal Claims' statutory interpretation is at odds with the structure of the exceptions in 46 U.S.C. app. § 292 note. According to Appellants, exception (A)(i) applies to the vessel STUYVESANT itself; exception (A)(ii) applies to "any other hopper dredging vessel"; and exception (A)(iii) applies to "any other non-hopper dredging vessel." Because these clauses are separated by semi-colons, Appellants argue that the three numbered clauses are independent. They argue that the Court of Federal Claims impermissibly read limitations into the plain and unambiguous statutory language of exception (A)(iii), specifically that the non-hopper dredges must be documented before the effective date of the Act, and that utilized non-hopper dredges must be supplemental to the dredging activity involving hoppers. Appellants contend that if Congress had intended exception (A)(iii) to apply only to non-hopper dredges documented as of 1992, the date the Act was enacted, it could have said so explicitly, just as it specified in exception (A)(ii). They argue that tying all three exceptions to the operation of hopper vessels was erroneous.

Norfolk responds that the Court of Federal Claims properly interpreted the plain language of the statute. It argues that the statute was intended to exempt vessels, not companies, and was intended to provide for the continued availability of the vessel STUYVESANT, not SDC. Contrary to Appellants' arguments, Norfolk argues the court did not read in limitations from the legislative history, but instead based its statutory construction on the plain

meaning. Under Appellants' construction, allowing foreign-owned companies like Bean to engage in unlimited non-hopper dredging makes the language "as is necessary ... to fulfill dredging obligations under a specific contract" in exception (A)(iii) completely superfluous—thus allowing an exception to swallow the rule.

[1–3] Statutory interpretation begins with the language of the statute. *Williams v. Taylor,* 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). A court derives the plain meaning of the statute from its text and structure. *Alexander v. Sandoval,* 532 U.S. 275, 288, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). If the language is clear and fits the case, the plain meaning of the statute generally will be regarded as conclusive. *Sullivan v. Stroop,* 496 U.S. 478, 482, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990); *see also VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1579–80 (Fed.Cir.1990) (noting that unambiguous statutory language controls, unless legislative intent is clearly contrary or when its application produces a result so unlikely that Congress could not have intended it). "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

■ The language of the statute at issue in this case is clear and unambiguous, and absent extraordinary circumstances our inquiry must end here. *See VE Holding,* 917 F.2d at 1580. Thus, it is unnecessary to seek clarification in the admittedly sparse legislative history. *See Norfolk II,* 58 Fed. Cl. at 756 ("The legislative history is limited.").

The exceptions pertaining to SDC set forth in 46 U.S.C. app. § 292 note apply to three categories of vessels in which SDC

has an ownership interest, each set forth in its own separate subparagraph. The three exceptions are separated by semicolons and do not expressly incorporate the requirements of any other exception. Exception (A)(i) pertains to the hopper vessel STUYVESANT. Oceans Act of 1992, § 5501(a)(2)(A)(i). Exception (A)(ii) concerns "any other hopper dredging vessel" and imposes certain further limitations as to which hopper dredges it exempts. *Id.* § 5501(a)(2)(A)(ii). Similarly, exemption (A)(iii) concerns "any other non-hopper dredging vessel" with certain further limitations on the scope of the exemption. *Id.* § 5501(a)(2)(A)(iii). These three self-contained, semi-colon delimited subparagraphs are independent of each other.

Exemption (A)(iii) provides:

(iii) any other non-hopper dredging vessel documented under chapter 121 and chartered to Stuyvesant Dredging Company or to an entity in which it has an ownership interest, as is necessary (a) to fulfill dredging obligations under a specific contract, including any extension periods; or (b) as temporary replacement capacity for a vessel which has become disabled but only for so long as the disability shall last and until the vessel is in a position to fully resume dredging operations; however, this exception expires on December 8, 2022 or when the vessel STUYVESANT ceases to be documented under chapter 121, whichever first occurs;

*Id.* § 5501(a)(2)(A)(iii). Under exemption (A)(iii), non-hopper dredges are released from the prohibitions of 46 U.S.C. app. § 292 under the following conditions: (1) the non-hopper dredge must be documented under 46 U.S.C. ch. 121, *id.;* (2) the non-hopper dredge must be "chartered to [SDC] or to an entity in which it has an ownership interest," *id.;* (3) the non-hopper dredge must be chartered to fulfill

dredging obligations under a specific contract, including any extension periods, *or* as temporary replacement capacity for a vessel which has become disabled, but only for so long as the disability shall last and until the vessel is in a position to fully resume dredging operations, *id.;* and (4) the exemption expires on the earlier of December 8, 2022 or when the vessel STUYVESANT ceases to be documented under 46 U.S.C. ch. 121. *Id.*

In urging us to adopt the statutory construction of the Court of Federal Claims, Norfolk argues that the court's importation of two additional limitations not present in the statutory language was correct. As outlined previously, the Court of Federal Claims interpreted exception (A)(iii) to require that non-hopper dredges could only be used "to fulfill contracts entered into utilizing STUYVESANT or any other qualified hopper." *Norfolk II*, 58 Fed.Cl. at 753. Further, the court required the supplemental chartering of a non-hopper dredge under an existing contract for "any other qualified hopper" was only allowable to "supplement[ ] a hopper vessel documented as of 1992," the date the Oceans Act was enacted. *Id.* at 755.

The Court of Federal Claims' interpretation erroneously adds conditions not present in the statutory language. Neither the plain language of exception (A)(iii) nor the structure of the three exceptions pertaining to SDC provides any basis for the court's conclusion that non-hopper dredges could only be used in a supplemental or replacement capacity to fulfill contracts expressly calling for the services of the vessel STUYVESANT or other hopper vessels documented as of 1992. If Congress had intended these additional restrictions, it could easily have added express language to that effect. Neither the Court of Federal Claims nor Norfolk indicated any language in the statutory excep-

tions to restrict the charter of non-hopper dredges solely to "supplement," or fulfill contracts calling for, the vessel STUYVESANT or other hopper dredges documented as of 1992. There is no express language requiring that non-hopper dredges only supplement, as temporary replacements, hopper dredges that satisfy the requirements of exception (A)(ii). *See* Oceans Act of 1992, § 5501(a)(2)(A)(iii). It is telling that exception (A)(ii) specifically requires chartered hopper dredges to be "documented under [46 U.S.C. ch. 121] before the effective date of this Act," *id.* § 5501(a)(2)(A)(ii), which was November 24, 1992. Exception (A)(iii) lacks a similar clause. *See id.* § 5501(a)(2)(A)(iii). We conclude that such an omission was intentional. *See Duncan v. Walker*, 533 U.S. 167, 173–74, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (noting that where Congress introduces language in one section yet omits it in another, the disparate inclusion or exclusion is deemed intentional).

Finally, contrary to the Court of Federal Claims' contentions, *Norfolk II*, 58 Fed. Cl. at 758, and Norfolk's arguments, a plain meaning interpretation does not cause the exception to swallow the rule. Exception (A)(iii) does not exempt every non-hopper dredge chartered to commercial entities in which SDC has an ownership interest, but only those that meet the additional criteria enumerated in the exception. The non-hopper dredges must be chartered "to fulfill dredging obligations under a specific contract" or in a "temporary replacement capacity" for a disabled vessel, and the charter must occur before the exception expires. Oceans Act of 1992, § 5501(a)(2)(A)(iii).

### B. Present Applicability of Statutory Exemption

■ Under our preceding statutory interpretation of exception (A)(iii), we conclude that exception (A)(iii) has four requirements. We address Bean's satisfaction of each requirement in turn.

First, the non-hopper dredge must be documented under 46 U.S.C. ch. 121. There is no dispute that the MERIDIAN is a non-hopper dredging vessel documented under 46 U.S.C. ch. 121. *See Norfolk II*, 58 Fed.Cl. at 743.

Second, the non-hopper dredge must be chartered to SDC or to an entity in which it has an ownership interest. There is no dispute that SDC has a 50% ownership interest in Bean. *Id.* at 743–44. The MERIDIAN, in turn, is chartered to Bean. *Id.* at 743. Thus, there is no dispute that the non-hopper dredge MERIDIAN is chartered to Bean, an entity in which SDC has an ownership interest.

Third, the non-hopper dredge must be chartered to fulfill dredging obligations under a specific contract, including any extension periods, or as temporary replacement capacity for a vessel which has become disabled, but only for so long as the disability shall last and until the vessel is in a position to fully resume dredging operations. Bean proposed that the MERIDIAN would be chartered to perform dredging contracts under the Corps' contract bidding solicitation no. DACW54–03–B–0011. *See id.* at 743. Bean was the lowest bidder on the contract, and the Corps awarded the contract to Bean. *Id.* Thus, Bean satisfies this requirement because it chartered the MERIDIAN to fulfill dredging obligations under a specific contract.

Fourth, the exemption expires on the earlier of December 8, 2022 or when STUYVESANT ceases to be documented under chapter 121 of Title 46, United States Code. Because the vessel STUYVESANT is currently documented under 46 U.S.C. ch. 121, the statutory exception has not yet expired.

Accordingly, there are no genuine issues of material fact that Bean's chartering of the vessel MERIDIAN pursuant to the contract falls within the correct statutory construction of exception (A)(iii). Thus, we reverse the grant of summary judgment in favor of Norfolk and remand to the Court of Federal Claims with instructions to enter summary judgment in favor of Appellants.

## CONCLUSION

Because the Court of Federal Claims erred in its construction of the statutory exception to 46 U.S.C. app. § 292 and because we conclude under the correct construction that Bean falls within the statutory exception, we reverse the grant of summary judgment in favor of Norfolk and remand to the Court of Federal Claims with instructions to enter summary judgment in favor of Appellants Bean and the United States.

*REVERSED AND REMANDED.*

## COSTS

Costs to Appellants.